Miltok Alpert, J.
This is a claim for the appropriation of claimant’s land pursuant to section 30 of the Highway Law, which proceedings are described as Ulster-Delaware, Part 1, S. H. 16, Ulster County, Map No. 89, Parcel Nos. 125, 126, 127, 128,129 and 130 (in the Town of Shandaken) and as Coldbroolt-Beechford and Ashokan Reservoir, S.H. No. 1186, Ulster County, Map No. 9, Parcel Nos. 9,10, 51 and 52, and Map No. 33, Parcel No. 48 (in the Town of Olive).
[Technical description of land taken omitted.]
The highest and best use of claimant’s property before the appropriation was for development and was the same after the appropriation.
Claimant’s appraiser appraised the Town of Olive property and the Town of Shandaken property separately.
*709 In the Town of Olive, where claimant owned 195.026± acres before the appropriation, the appraiser divided the land into building lots, the dam site and various acreage plottages. He valued the 30 building lots at $2,500 each for a total of $75,000; added an adjacent small half-acre plot at $1,200, the dam site of approximately one acre at $2,500, and two and one-half acres immediately east of the dam site (including a portion of the pond) at $5,000. To this he added the 95.026± acres directly east of the pond area at $500 per acre for a total of $47,513. Another 36± acres further east of Route 28 and south of the Coldbrook Road he valued at $300' per acre for a total of $10,800 and another area further east of the 36± acre area and also south of Coldbrook Road, he valued at $750 per acre for a total of $30,000. This produced an over-all total value of the land appraised in the Town of Olive of $172,013.
The appropriations in the Town of Olive took eight of the claimed building lots with the exception of two lots where a small portion remained that might be sold off together (see claimant’s Exhibit 8 in evidence and claimant’s appraisal pages 6 and 7) for a total value of $19,500; the one-half acre plot at $1,200, the dam site at $2,500, and the dam and spillway which he valued at a replacement cost of $43,000 for a total direct damage of $66,200. To this he added $4,000 for a cost to make the pond the same size as before the appropriation. He consequentially damaged the second row of the claimed building lots at 50% or $6,250. The remaining lands were undamaged. He stated that his after value of the Town of Olive holdings was $95,563 and that the total damage relating to lands in the Town of Olive and as detailed above, was $76,450.
In the Town of Shandaken, the claimant’s appraiser valued the lands on an acreage basis. He appraised 2.68± acres on the west side of Route 28 at $100 per acre for a total of $268. The 13.3± acres fronting on the west side of Route 28 for 1525 ± feet he valued at $3,000 an acre, or $39,900. The 13.760± acres lying to the rear of such western frontage acres, he valued at $1,000 per acre or $13,760. On the east side of Route 28, he valued 12.9± acres with 1675± feet of frontage also at $3,000 an acre or $38,700 and the 15.1± acres to the rear of such eastern frontage at $1,000 per acre or $15,100. He valued the remaining 23.5 acres further to the rear of such eastern frontage at $100 per acre for $2,350. The total value of the claimant’s land in the Town of Shandaken was valued at $121,517 before the appropriation ($110,078 for lands not taken plus $11,439 for 4.87 acres directly taken; claimant’s appraisal pages 10 and 12).
*710 To the lands remaining in the Town of Shandaken after the appropriation he attributed a value of $65,004.80* resulting in a damage amount of $45,073.20 *. Of this damage amount $11,439 was direct damage for the acreages taken valued at $3,000 per acre, with the exception of 1.090± acres which he valued at $100 per acre. The balance was consequential damage' to the remainder — a 50% damage to 12.925± acres on the west side of Route 28, or $19,387 and a similar damage to 9.498± acres on the east side of Route 28, or $14,247.
The State’s appraiser also valued the holdings in each town separately. In the Town of Olive he valued the 25± acres of frontage at $2,500 per acre, or $62,500; the 100± acres to the rear at $500 per acre for a total of $50,000, and the 60± acres on the town road at $125 per acre for a total of $7,500. This produced an over-all total before value for the lands in the Town of Olive of $120,000.
In the Town of Shandaken, the State’s appraiser valued the frontage acreage at $1,500 per acre for a total of $67,500 for the 30* acres on the west side of Route 28 and the 15* acres on the east side. The 41* acres to the rear of the east side frontage he valued at $125 per acre for a total of $5,125. This produced a total before value of $72,700. This gave him an over-all total rounded before value for the lands in both towns of $193,000.
After the appropriation, he valued the remainder in the Town of Olive at $100,935 and in the Town of Shandaken at $63,978. He totaled these at $165,000 (rounded). Subtracting the latter from his over-all before value of $193,000, he arrived at a total damage of $28,000. Of this, $19,650 represented direct damage, $8,350 consequential damage and $200 rental of the temporary easement.
After careful consideration of the testimony at the trial, the appraisals and exhibits in evidence, the demeanor of the witnesses, and the court’s view of the subject property, the court finds as follows :
1. The attorneys agreed at the outset of the trial that the temporary easement — Map 33, Parcel No. 48 — should be valued on a rental basis of $200 for the duration of the temporary easement. The court, accordingly, adopts such $200 figure for such rental fpr the duration of such temporary easement.
2. With respect to the lands taken by the State in the Town of Shandaken, both appraisers viewed only the frontage land as *711 having been damaged. While they valued back acreages, they both agreed that these were not damaged as the result of the State’s takings. Accordingly, the court will not find.before and after values of such back areas. The court will value only the frontage areas.
The court adopts the State’s appraiser’s before valuations of frontage acreage at $1,500 per acre for a total of $67,500 for the 30± acres on the west side of Route 28 and 15 ± acres on the east side of Route 28 (State’s appraisal, page 17).
The State’s takings in the Town of Shandaken were by Map 89, Parcels No. 125 — 3.351± acres on the east side, No. 126 — 1.058± acres on the east side, No. 127 — .345± acres on the west side and No. 128 — .032± acres on the west side, totaling 4.786± acres as fee takings, and No. 129 — .051± acres on the east side and No. 130 — ■ .030± acres on the west side totaling .081 ± acres as permanent easement takings.
The court adopts the claimant’s appraiser’s view that the permanent easement takings should be valued as fee takings (claimant’s appraisal, page 11).
The court finds that there was no consequential damage as the result of the takings of Parcels Nos. 125, 127, 129 and 130, but that there was consequential damage as the result of the takings of Parcels Nos. 126 and 128, both of which were at the southerly end of claimant’s property in the Town of Shandaken. Such consequential damage resulted because the highway was raised some 15 to 20 feet along claimant’s remaining property in this area (State’s appraisal, page 24). On the east of Route 28, 2± remaining acres west of the brook and on the west of Route 28, 2.648± remaining acres were so damaged. The court adopts the State’s appraiser’s view that areas so damaged had an after value of $500 per acre (State’s appraisal, page 26) and on the basis thereof finds that these 4.648± acres had an after fair market value of $500 per acre. Based on a before fair market value of $1,500 per acre and an after fair market value of $500 per acre, the court finds that there was a consequential damage of $4,648 on account of the takings of Parcels Nos. 126 and 128 which the court hereby rounds to $4,650.
The court finds that the remainder of claimant’s property in the Town of Shandaken had the same after fair market value per acre as it had before the takings of Parcels Nos. 125, 127, 129 and 130. Accordingly, it becomes necessary only to total the four fee and two permanent easement taking areas, which total to 4.867± acres, and to multiply the same by $1,500 per acre to compute the direct damage as the result of the takings in the
*712 Town of Shandaken. This computes out to $7,300.50, which the court hereby rounds to a fair market value of $7,300.
To summarize, for the takings in the Town of Shandaken:
Direct damage..................................$ 7,300
Consequential damage........................... 4,650
$11,950
3. With respect to the lands taken by the State in the Town of Olive, both appraisers also viewed the frontage land as having been damaged. While they valued back acreages, they both agreed that these were not damaged as the result of the State’s takings. Accordingly, the court will not find before and after values of such back areas. The court will value only the frontage areas.
The claimant’s appraiser valued most of the frontage area on a $2,500 per lot basis (claimant’s appraisal, page 5 and claimant’s Exhibit 8 in evidence), while the State’s appraiser in his appraisal (pages 18-21) and testimony at the trial, valued the area on a $2,500 per acre basis, with a basic $2,000 per acre value and $500 per acre on account of potential for residential development.
After careful consideration of the appraisals, the testimony at the trial, the court’s view of the property, the sales proffered by each appraiser, the existence of the pond, the roads constructed by-the claimant (which were accepted for dedication by the town several months after the State’s takings), the availability of a water supply on the premises, the absence of official approval of a subdivision plat, and the further absence of approvals for sewage disposal, the court finds that the frontage area cannot be valued on a per lot basis, as the claimant’s appraiser did, but should be valued on a per acre basis, with an increment for potential for residential development, as the State’s appraiser did (Hewitt v. State of New York, 18 A D 2d 1128).
The court adopts the State’s appraiser’s basic $2,000 per acre valuation, but finds that the increment for potential for residential development should be adjusted upward from $500 to $1,000 per acre. In doing so, the court has considered State’s sales VL-68S and VL-56S and has found that a further $500 upward adjustment for potential is merited on account of the factors described above. Based on the State’s appraiser’s 25± acres in the frontage area, the court finds that the before fair market value thereof was $75,000. As indicated above, the court *713 does not value back areas in the Town of Olive because these were not damaged by the State’s takings.
The State’s direct takings in the Town of Olive were by Map 9, Parcels No. 9 —1.225± acres on the east side of Route 28, No. 51 — 0.615± acres on the east side, No. 52 — 3.030± acres on the east side, totaling 4.87± acres on the east side, and No. 10 — 0.156± acres as a permanent easement taking on the east side.
The court adopts the State’s appraiser’s after value of the permanent easement area of $1,000 per acre (State’s appraisal, pages 25 and 27) and finds that the fair market value of the permanent easement taking was $312.
The court finds that of the initial 25 ± frontage acres, valued herein by the court at $3,000 per acre, there remained after the fee and permanent easement takings, 19.974± acres (25± less 4.87± less 0.156-+).
With respect to consequential damage, the State’s appraiser was of the opinion that 6± acres (including the 0.156± permanent easement area) were so affected (State’s appraisal, page 25), whereas the claimant’s appraiser described the area he regarded as affected by reference to lots 1, 6, 7, 12, 13, 23 and 24 on claimant’s Exhibit 8 in evidence (claimant’s appraisal, page 7). The latter also advanced other damage items with reference to the pond, dam, spillway and dam site which will be considered separately below (claimant’s appraisal, page 7). The court adopts the State’s appraiser’s 6± acres as an appropriate description of this area, but in view of the court’s separate treatment above of the permanent easement area, reduces this to 5.844± acres.
The State’s appraiser ascribed an after value of $6,000 for the 6± acres by reason of the change of grade of the highway, the drainage of the pond (the dam was destroyed because the dam site is under the bed of the new location of the highway), and the loss of possible building sites (State’s appraisal, page 25).
The court adopts the State’s appraiser’s after value of $1,000 per acre for such 6± acres but for the reason described above, reduces this to 5.844± acres. Subtracting such 5.844± acres from the total remaining 19.974± acres, the court finds that there were 14.130± frontage acres remaining that were unaffected and had a fair after market value of $3,000 per acre or a total of $42,390. To this, the court adds $5,844 for the consequentially damaged 5.844± acres and $156 for the after value of the permanent easement area. This produces an after value of $48,390 for the remaining frontage lands in the Town of *714 Olive, which the court finds to be the fair after market value thereof.
The difference between the court’s before fair market value of $75,000 for the original 25 ± acre frontage area and the court’s after fair market value of $48,390 for the remaining frontage area is $26,610, of which $14,610 is direct damage for 4.87± acres directly taken, $312 is idirect damage for the permanent easement taking, and $11,688 is consequential damage.
4. The court now comes to consideration of the- pond, dam, spillway and dam site. Claimant’s appraiser in his appraisal (page 7) included 3 damage items for these:
Replacement cost of the
dam and spillway..............................$43,000
Dam site....................................... 2,500
Labor to excavate to make
another pond................................. 4,000
$49,500
As to the item of $2,500 for the dam site, the court has already accounted for this area in its award for the direct takings in the Town of Olive.
It was claimant’s contention that it was entitled to an award of $47,000 for replacement of the pond, dam and spillway.
At the trial, an engineer testified on behalf of the claimant that he computed the cost of replacing the dam in 1967 at $39,468 and that for excavation and back fill at $3,532. His total was $43,000 plus $4,000 for providing a new pond bed of equivalent size. On cross-examination, this witness agreed that there had been about a 7% increase in cost between the State’s taking date and the date as of which he made his estimates. This would reduce his $47,000 total by $3,290 to $43,710.
The State’s appraiser, although he did not consider the pond, dam and spillway as being as good as they actually were, found that they did not enhance the property above the values he ascribed and noted negative factors such as future maintenance and problems of legal liabilities.
It was the claimant’s view that the pond could serve as an asset to a residential community.
The court has carefully considered the matter, including the maintenance and legal liability problems, and finds that in any event the pond, dam and spillway might have been added to one lot, such as lot 13-B on claimant’s Exhibit 8 in evidence, and that that lot could have commanded an attractive price if the sub *715 ject property had become a residential subdivision by virtue of necessary official plat and sewage disposal approvals. The court has included the area of the pond (l1/2± acres) in its above valuations and finds that in so doing it has adequately accounted for the area. Furthermore, the court’s before valuation took the pond, dam and spillway into consideration as they contributed to the court’s $75,000 before valuation of the 25± frontage acres.
It is important to note that neither appraiser valued the pond, dam and spillway as an independent improvement. As stated above, the State’s appraiser in the before situation valued the frontage area on an acreage basis (State’s appraisal, page 21), and included therein an increment for potential for residential or subdivision development, as he testified. Similarly, the claimant’s appraiser in the before situation valued, only land on a lot and parcel basis (claimant’s appraisal, page 5); the latter did not fix separate before values for the pond, dam and spillway on the theory that they were independent improvements to be valued separately. Accordingly, the court has not valued them separately in the before situation, but rather has included them in its general finding of $3,000 per acre as the before fair market value of the frontage area in the Town of Olive. Similarly, their absence in the after situation has been considered by the court in its finding of the total after fair market value of the remainder of such frontage area.
Where, as here, the damages, including consequential damages, are less than the cost to cure (replacement of the pond and dam), the former are the legal limit of the State’s liability for compensation (cf. Mayes Co. v. State of New York, 18 N Y 2d 549; Utica Steam Engine & Boiler Works v. State of New York (Claim No. 42928, filed April 8, 1965, page 8 of typewritten decision).
The court finds that it is required to value claimant’s affected lands before the State’s takings and after the State’s takings and that the difference represents the amount by which claimant has been damaged. Such valuations covered the before situation with the pond, dam and spillway present and the after situation with the pond, dam and spillway no longer present. , The court views it as legally impermissible also to allow as a damage item the amount claimed by the claimant as the cost for replacing the pond, dam and spillway — i.e., the revised total of $43,710 (Abe Cooper-Syracuse, Inc. v. State of New York, 8 A D 2d 578, affd. 6 N Y 2d 964). The court, in effect, has found that the pond, dam and spillway did not contribute enhancement value to such extent in the before situation and also that their having *716 been eliminated did not decrease the value of the after situation to such extent. The court’s before and after valuations, inclusive of these features in the before situation and exclusive of them in the after situation, are as found in item 3 above.
Accordingly, the court rejects claimant’s claim for added compensation to replace the pond, dam and spillway.
5. The court totals its award as follows:
a. In the Town of Shandaken
(1) Direct damage............................$ 7,300
(2) Consequential damage..................... 4,650
b. In the Town of Olive
(1) Temporary easement...................... 200
(2) Direct damage (fee)....................... 14,610
(3) Direct damage (permanent easement)....... 312
(4) Consequential damage..................... 11,688
$38,760
The motions made by the State at the close of claimant’s case, and renewed at the end of the trial, as they deal with the acreages not valued by the court for reasons previously set forth in this decision are hereby denied as moot.
The motions made by the State to strike that portion of claimant’s appraisal and its testimony relating to the 12.9± acres in the Town of Shandaken valued at $3,000 per acre, on the ground that the sales advanced were not comparable; and that portion of claimant’s appraisal and the testimony relating to the valuation on a lot basis of the potential subdivision are granted for the reasons set forth in this decision.
The motion of the State to strike claimant’s testimony and that portion of its appraisal relating to after values not based on comparable sales is also granted.
All other motions made by both the State and the claimant, not heretofore passed upon, are denied.
The court has marked the findings of fact and conclusions of law submitted by the State.
The claimant is awarded the sum of $11,950 for all damages direct and consequential as the result of the takings pursuant to Map No. 89, with interest thereon from March 22, 1966 to September 22, 1966 and from December 9, 1966 to the date of entry of judgment herein; and the claimant is awarded the sum of $26,810 for all damages direct and consequential as the result of the takings pursuant to Map Nos. 9 and 33, with interest thereon from April 19, 1966 to October 19, 1966 and from December 9, 1966 to the date of entry of judgment herein.

 On page 11 of claimant’s appraisal, values of takings are again subtracted from areas which remained after taking areas had previously been eliminated on page 10 and which taken areas were separately valued on page 12.